## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES MURPHY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> AMC ENTERTAINMENT HOLDINGS, INC. <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:19-cv-09919 |

## DEFENDANT AMC ENTERTAINMENT HOLDINGS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

COMPLAINT ALLEGATIONS ........................................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.    The Complaint Must Be Dismissed under FRCP 12(b)(6) Because Plaintiff Fails
To State A Claim Under the ADA, the NYSHRL and the NYCHRL. .............................. 5

    A.    The ADA Does Not Require AMC to Make and/or Sell Accessible Gift
Cards. .................................................................................................................... 5

        1.    The ADA Does Not Require AMC to Make or Sell Accessible
Goods Such as Gift Cards with Braille or Some Other
Accessibility Feature. ...................................................................... 5

        2.    The ADA's Regulation Concerning the Provision of Auxiliary
Aids and Services Does Not Mandate the Sale of Gift Cards with
Braille or Other Accessibility Features. ......................................... 11

        3.    Plaintiff's Argument that AMC Gift Cards are Like Currency
that Must be Accessible Has No Merit. ........................................... 16

    B.    Plaintiff's NYSRL, NYCHRL, and Declaratory Judgment Claims Must
Be Dismissed. ...................................................................................................... 18

II.    The Complaint Must Be Dismissed Under FRCP 12(b)(1) Because Plaintiff
Lacks Standing. ................................................................................................................. 19

    A.    Plaintiff Has Not Suffered an Injury In Fact nor Does He Face An
Imminent Future Injury. ...................................................................................... 19

    B.    Plaintiff's Remaining State and Municipal Law Claims Should Be
Dismissed. ........................................................................................................... 24

CONCLUSION .................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access 4 All, Inc. v. G&T Consulting Co., LLC,*
   No. 06 CIV 13736, 2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) ..........................................22

*Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.,*
   No. CIV.A.3:05-CV-1307-G, 2005 WL 2989307 (N.D. Tex. Nov. 7, 2005) ........................24

*Access for the Disabled, Inc. v. Rosof,*
   No. 805CV1413T30TBM, 2005 WL 3556046 (M.D. Fla. Dec. 28, 2005) .............................23

*Addison Automatics, Inc. v. Hartford Cas. Ins. Co.,*
   731 F.3d 740 (7th Cir. 2013) .....................................................................................................6

*Am. Council of Blind v. Astrue,*
   No. C 05-04696 WHA, 2009 WL 3400686 (N.D. Cal. Oct. 20, 2009) ..................................13

*Am. Council for the Blind v. Paulson,*
   525 F.3d 1256 (D.C. Cir. 2008) ..................................................................................16, 17, 18

*Andrews v. Blick Art Materials, LLC,*
   268 F. Supp. 3d 381 (E.D.N.Y. 2017) .....................................................................................19

*APWU v. Potter,*
   343 F.3d 619 (2d Cir. 2003) .....................................................................................................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................................5

*Brother v. Rossmore Tampa Ltd. P'ship,*
   No. 8:03CV1253T-24MAP, 2004 WL 3609350 (M.D. Fla. Aug. 19, 2004) ..........................24

*Camarillo v. Carrols Corp.,*
   518 F.3d 153 (2d Cir. 2008) .....................................................................................................13

*Castillo v. The John Gore Org., Inc.,*
   No. 19-cv-388, 2019 WL 6033088 (E.D.N.Y. Nov. 14, 2019) ................................................23

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984) ....................................................................................................................7

*Childress v. Fox Assocs., LLC,*
   932 F.3d 1165 (8th Cir. 2019) ..................................................................................................12

ii

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983) ..................................................................................................20

*Cortlandt St. Recovery Corp. v. Hellas Telecomm.*,
   790 F.3d 411 (2d Cir. 2015) ...................................................................................20

*Doe v. Mut. of Omaha Ins. Co.*,
   179 F.3d 557 (7th Cir. 1999) .............................................................................7, 8, 9

*Feldman v. Pro Football, Inc.*,
   419 F. App'x 381 (4th Cir. 2011) ............................................................................12

*Feltzin v. Stone Equities, LLC*,
   No. CV166457SJFAKT, 2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018) ...............22, 23

*Feltzin v. Triangle Properties #1, LLC*,
   No. 14-cv-5131, 2016 WL 11599264 (E.D.N.Y. Dec. 15, 2016) ...........................21

*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ...........4, 18, 21

*Ford v. Schering-Plough Corp.*,
   145 F.3d 601 (3d Cir. 1998) .....................................................................................8

*Funches v. Barra*,
   No. 14-cv-7382, 2016 WL 2939165 (S.D.N.Y. May 17, 2016) .............................8, 9

*Graves v. Finch Pruyn & Co., Inc.*,
   457 F.3d 181 (2d Cir. 2006) ....................................................................................19

*Holt v. Am. City Diner, Inc.*,
   No. CIV. 05-1745 (CKK), 2007 WL 1438489 (D.D.C. May 15, 2007) ..................23

*Innovative Health Sys., Inc. v. City of White Plains*,
   117 F.3d 37 (2d Cir. 1997) ........................................................................................7

*Jancik v. Redbox Automated Retail, LLC*,
   No. SACV 13-1387, 2014 WL 1920751 (C.D. Cal. May 14, 2014) ......................8, 9

*In re Joint E. & S. Dist. Asbestos Litig.*,
   14 F.3d 726, 731 (2d Cir. 1993) ..............................................................................25

*Karczewski v. DCH Mission Valley LLC*,
   862 F.3d 1006 (9th Cir. 2017) .................................................................................10

*Klein & Co. Futures v. Bd. of Trade of City of N.Y.*,
   464 F.3d 255 (2d Cir. 2006) ....................................................................................25

iii

*KM Enterprises, Inc. v. McDonald*,
　No. 11-CV-5098 ADS ETB, 2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012),
　*aff'd*, 518 F. App'x 12 (2d Cir. 2013) ....................................................19

*Kolari v. N.Y.-Presbyterian Hosp.*,
　455 F.3d 118 (2d Cir. 2006)....................................................25

*Kreisler v. Second Ave. Diner Corp.*,
　731 F.3d 184 (2d Cir. 2013)....................................................3, 20

*Krist v. Kolombos Rest. Inc.*,
　688 F.3d 89 (2d Cir. 2012)....................................................5

*Lamb v. Charlotte Cty.*,
　429 F. Supp. 2d 1302 (M.D. Fla. 2006) ....................................................24

*Lenox v. Healthwise of Ky., Ltd.*,
　149 F.3d 453 (6th Cir. 1998) ....................................................8

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)....................................................20, 23

*Mendez v. Apple, Inc.*,
　18-cv-7550, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019)....................................................24

*In re Mexico Money Transfer Litig.*,
　267 F.3d 743 (7th Cir. 2001) ....................................................18

*N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*,
　669 F.3d 374 (3d Cir. 2012)....................................................10

*Noel v. N.Y. City Taxi & Limousine Comm'n*,
　687 F.3d 63 (2d Cir. 2012)....................................................7

*Norkunas v. Wynn Resorts Holdings, LLC*,
　No. 2:07CV00096RLHPAL, 2007 WL 2949569 (D. Nev. Oct. 10, 2007) *aff'd
　sub nom. Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269 (9th Cir.
　2009) ....................................................23

*Parker v. Metro. Life Ins. Co.*,
　121 F.3d 1006 (6th Cir. 1997) ....................................................8, 9

*Perdum v. Forest City Ratner Cos.*,
　677 F. App'x 2 (2d Cir. 2017) ....................................................21

*Porat v. Lincoln Towers Cmty. Ass'n*,
　No. 04-cv-3199-LAP, 2005 WL 646093 (S.D.N.Y. Mar. 21, 2005)....................................................19

iv

*Rizzi v. Hilton Domestic Operating Co., Inc.*,
    No. 18-CV-1127(SJF)(ARL), 2019 WL 5874327 (E.D.N.Y. July 18, 2019) ........................22

*Rodal v. Anesthesia Grp. of Onondaga*,
    369 F.3d 113, 117 n.1 (2d Cir. 2004) ....................................................................................19

*Romanello v. Shiseido Cosmetics Am., Ltd.*,
    No. 00 Civ. 7201, 2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002) .........................................19

*Shariff v. Channel Realty of Queens, LLC*,
    No. 11-cv-1499, 2013 WL 5519978 (E.D.N.Y. Sept. 30, 2013) ............................................22

*Small v. Gen. Nutrition Cos.*,
    388 F. Supp. 2d 83 (E.D.N.Y. 2005) .............................................................................20, 23

*State St. Bank & Trust Co. v. Salovaara*,
    326 F.3d 130 (2d Cir. 2003) ...................................................................................................11

*Stephens v. Shuttle Assocs., L.L.C.*,
    547 F. Supp. 2d 269 (S.D.N.Y. 2008) ...............................................................................16, 19

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................................................................18

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ............................................................................................................20

*U.S. v. Knauer*,
    707 F. Supp. 2d 379 (E.D.N.Y. 2010) ....................................................................................11

*West v. Five Guys Enters., LLC*,
    No. 15-cv-2845, 2016 WL 482981 (S.D.N.Y. Feb. 5, 2016) .................................................16

*West v. Moe's Franchisor, LLC*,
    No. 15CV2846, 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015) ..........................................13, 15

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 1999) .........................................................................................7, 8, 9

*Young v. Polo Retail, LLC*,
    No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ....................................18

**Statutes**

15 U.S.C. § 1693l-1 .......................................................................................................................10

28 U.S.C. § 1367(c)(3) ...................................................................................................................24

29 U.S.C. § 794 ..............................................................................................................................16

v

Americans with Disabilities Act ("ADA") ................................................................... *passim*

Credit CARD Act of 2009 .................................................................................................10

N.Y. U.C.C. Law § 2-105(1) (McKinney) ........................................................................10

New York City Human Rights Law ("NYCHRL") ........................................................ *passim*

New York State Human Rights Law ("NYSHRL") ........................................................ *passim*

Rehabilitation Act § 504 ..............................................................................................16, 17

**Other Authorities**

28 C.F.R. Pt. 36 .................................................................................................................17

28 C.F.R. Pt. 36, App. B .................................................................................................12

28 C.F.R. Pt. 36, App. C .................................................................................................13

28 C.F.R. § 36.303 ....................................................................................................11, 12

28 C.F.R. § 36.303(b)(2) ......................................................................................12, 13, 15

28 C.F.R. § 36.303(c)(1)(ii) .............................................................................................12

28 C.F.R. § 36.307 ..................................................................................................... *passim*

28 C.F.R. § 36.307(a) .........................................................................................................1

28 C.F.R. § 36.307(a) .........................................................................................................8

31 C.F.R. Part 17 ...............................................................................................................17

56 Fed. Reg. 35,544, 35,567 (July 26, 1991) ................................................................12

56 Fed. Reg. 35,544, 35,571 (July 26, 1991) ..................................................................7

Fed. R. Civ. P. 12(b)(1) ....................................................................................................19

Fed. R. Civ. P. 12(b)(6) ......................................................................................................5

Fed. R. Civ. P. 23 .............................................................................................................18

## INTRODUCTION

Plaintiff James Murphy ("Plaintiff") is among a group of blind plaintiffs that has flooded the New York federal courts with more than 250 boilerplate lawsuits in which they claim that various public accommodations have violated the Americans with Disabilities Act ("ADA") and New York state and city civil rights laws by failing to sell gift cards that have Braille or some other built-in accessibility feature.  First Amended Complaint ("FAC") ¶¶ 7, 18, 83.  Plaintiff himself has filed over 11 of these lawsuits, claiming in every case that he wanted to buy a gift card with Braille from each of the defendants.[1]

As set forth below, this lawsuit must be dismissed because (1) none of the laws in question require defendant AMC Entertainment Holdings, Inc. ("AMC" or "Defendant") to make or sell accessible gift cards with Braille or some other accessibility feature, and (2) Plaintiff does not have standing to bring this lawsuit.

On the merits, none of the cited laws or their regulations contain any language requiring AMC to make or sell gift cards with Braille or any other accessibility feature.  To the contrary, the ADA Title III regulations contain express language stating that the law "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities."  28 C.F.R. § 36.307(a) ("Section 36.307").  The regulation further provides -- as examples of "accessible or special goods" that do not have to be sold -- "Brailled versions of books."  *Id.* at § 36.307(c).  AMC's gift cards are no different than the books that public accommodations are not required to provide in Braille.

The ADA's explicit regulatory exemption for "goods" in Section 36.307 is consistent with many judicial decisions holding that while public accommodations have a duty to provide auxiliary

---

[1]     Declaration of Hope Bledsoe, dated February 10, 2020 at ¶¶ 3-5.

aids and services where necessary to ensure *access* to a public accommodation's goods and services, the ADA does not require public accommodations to sell goods that are accessible. Here, Plaintiff is seeking an injunction to require AMC to make and sell gift cards with Braille -- an "accessible or special good" that AMC is not required to provide under the regulations.

Plaintiff attempts to avoid the application of Section 36.307 by arguing that a gift card is not a good but a service which must be made accessible through the provision of auxiliary aids and services such as Braille. This argument fails for two reasons. First, established case law makes clear that the ADA does not dictate the nature of the goods *or services* that a public accommodation offers. It only requires public accommodations to provide equal access to those goods and services. Second, even assuming for the sake of argument that the regulation requiring the provision of auxiliary aids and services to ensure effective communication applied to AMC's gift cards, this regulation would not require AMC to sell gift cards with Braille or any other accessibility feature. If applicable, this regulation would require AMC to provide an auxiliary aid or service that ensures effective communication *based on an assessment of the individualized needs* of the individuals with disabilities who have put it on notice that they need an auxiliary aid or service. Furthermore, the ultimate decision as to what auxiliary aid or service will be provided would rest with AMC. Considering that only ten percent of people who are blind in the United States read Braille,[2] and that courts and the Department of Justice ("DOJ") have repeatedly approved of other types of auxiliary aids and services for communicating written material to people who are blind (*e.g.* reading information aloud, audio recordings), Plaintiff's claim that AMC must make and sell gift cards with Braille or some other accessibility feature has no merit.

---

[2]        *See* fn. 11 *infra*.

2

Plaintiff also has not stated a violation of the auxiliary aids and services provision because he never requested, nor was he ever refused, an auxiliary aid or service by AMC.  Plaintiff made one phone call to AMC to ask if AMC offers Braille gift cards *just three days before he filed his Complaint*.  This generic inquiry was neither a request for an auxiliary aid or service, nor could it have put AMC on notice that Plaintiff needed an auxiliary aid or service.  Because AMC was never on notice that Plaintiff needed an auxiliary aid or service, Plaintiff was not denied an auxiliary aid or service.

The FAC also alleges that AMC gift cards must have Braille or some other accessibility feature because they are a "cash like product" that are "required to be accessible like the U.S. Currency."  FAC, ¶ 34.  This argument lacks merit because a gift card that can only be redeemed for movie tickets or concessions at AMC theatres bears no resemblance to U.S. currency which is the foundation of this country's economy and can be used to purchase anything that is available for sale.  Moreover, the case holding that the Department of the Treasury must make U.S. paper currency accessible was decided under an entirely different law which (1) does not apply to public accommodations such as AMC, and (2) has an entirely different statutory and regulatory regime.

The Complaint also must be dismissed because Plaintiff lacks standing.  To have Article III standing to bring an ADA Title III claim, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and he must be under threat of an imminent harm in the future. *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013).  Plaintiff did not suffer an "injury in fact" because he never requested, nor was he ever denied, an auxiliary aid or service from AMC, and the lack of a Braille AMC gift cards did not adversely affect his ability to go to any AMC theatre.  Plaintiff faces no imminent harm because does not claim to have ever been to

an AMC theatre in the past (just that he lives "near" one) and has not even identified a theatre that he would go to in the future if Braille cards were available.

## COMPLAINT ALLEGATIONS

The FAC alleges that AMC violated Title III of the ADA, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") by failing to make and sell gift cards with Braille printed on them.  Plaintiff seeks a "permanent injunction requiring Defendant to design, implement, distribute and sell store gift cards … that are accessible to blind and vision-impaired individuals that may include Braille writing  … ."  FAC, Prayer for Relief, Para. (b), ¶ 55.

Plaintiff alleges that he is blind, lives in New York City, and reads Braille.  FAC, ¶¶ 2, 24.  Plaintiff claims to live "near" an AMC theater in Manhattan.  *Id.*, ¶ 25.  However, the FAC does not allege that Plaintiff has ever been to any AMC theatre location, including the one "near" his residence.  Plaintiff does alleges that he "has been a customer at Defendant's *stores* on prior occasions … ."  *Id.*, ¶ 21 (emphasis added)," even though there is no allegation in the FAC that AMC – a movie theatre owner and operator – owns or operates any "stores."

Plaintiff alleges that on October 22, 2019 — three days before he filed the instant action — he telephoned AMC's "customer service office," inquired if AMC sold "store gift cards" containing Braille, and was informed that AMC does not sell such gift cards.  *Id.*, ¶ 16.  Plaintiff also alleges that the AMC employee did not offer him an auxiliary aid or service (*id.* ¶ 17), but he does not allege that he ever told the employee hat he could not read a regular gift card or needed an auxiliary aid or service.

Plaintiff alleges the absence of Braille on AMC gift prevents him from being able to identify the card and access the balance on the card, the terms and conditions, as well as the unique card ID number.  *Id.*, ¶¶ 20, 46.

4

The FAC further alleges that "[t]he barriers encountered have [] deterred Plaintiff from visiting Defendant's physical locations" and that "Plaintiff ... intends to immediately purchase at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind and utilize it at Defendant's movie theater."  FAC, ¶¶ 21, 44.  The FAC contains no allegations about why he sought to purchase a gift card from AMC, when he would have a desire or need to patronize one of AMC's theaters in the future, which of AMC's locations Plaintiff would patronize in the future, or why the absence of Braille or other accessibility feature on AMC's gift cards prevented him from accessing any of AMC's locations (or the goods or services offered therein).

## ARGUMENT

I.    **The Complaint Must Be Dismissed under FRCP 12(b)(6) Because Plaintiff Fails To State A Claim Under the ADA, the NYSHRL and the NYCHRL.**

A.    **The ADA Does Not Require AMC to Make and/or Sell Accessible Gift Cards.**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  To state a claim under Title III of the ADA, a plaintiff must show that: (1) he or she is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA.  *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012).  Here, Plaintiff has not plausibly alleged that AMC discriminated against him within the meaning of the ADA.

1.    **The ADA Does Not Require AMC to Make or Sell Accessible Goods Such as Gift Cards with Braille or Some Other Accessibility Feature.**

In the original complaint, Plaintiff was quite clear about the nature of the relief he seeks: a "permanent injunction requiring Defendant to design, implement, distribute and sell store gift

5

cards … that are embossed with Braille writing that identify the name of the merchant and the

denomination of the gift card … with Braille writing on the packaging of the store gift cards and

additionally convey other pertinent information … ."   Compl., ECF No. 1, ¶ 36.   Perhaps

appreciating that the law does not require AMC to make and sell gift cards with Braille, Plaintiff

now says that he is simply asking for an "accessible" gift card "that may include Braille writing."

FAC, ¶ 55.[3]

Regardless of whether Plaintiff seeks a gift card with Braille or a gift card that is

"accessible," the FAC must be dismissed because Title III of the ADA does not require AMC to

create an "accessible" gift card with Braille or some other accessibility feature.   The ADA Title

III regulations have stated, since their inception:

> (a) This part does not require a public accommodation to alter its inventory to
> include accessible or special goods that are designed for, or facilitate use by,
> individuals with disabilities.
>
> …
>
> (c) Examples of accessible or special goods include items such as Brailled
> versions of books, books on audio cassettes, closed-captioned video tapes, special
> sizes or lines of clothing, and special foods to meet particular dietary needs.

28 C.F.R. § 36.307.

---

[3] Despite this, it is evident from numerous paragraphs in the FAC that Plaintiff is seeking an order requiring AMC to produce and sell gift cards embossed with Braille.  *See* FAC, ¶ 7 (complaining about the lack of an "auxiliary aid, such as Braille, *on the physical cards*"); *id.*, ¶ 16 (alleging that Plaintiff called AMC's customer service office to inquire "if Defendant sold gift cards *containing Braille*"); *id.*, ¶ 35 n.8 (alleging that there is "only one gift card on the market that *contains Braille*"); *id.*, ¶¶ 36 and 37 (alleging that AMC's gift cards "do not contain Braille" and seeking "[t]he addition of Braille"); *id.*, ¶ 55, *supra*; *id.*, ¶ 83 (alleging that "[t]he addition to store gift cards of *Braille on the gift card*" would not fundamentally alter nature of AMC's business or cause undue burden) (emphases added).  Simply put, "[Plaintiff's] coy pleading in this case cannot disguise the true nature of [his] claim[,]" *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 745 (7th Cir. 2013), namely, an action for injunctive relief that would require AMC to design, manufacture, distribute, and offer for sale gift cards containing Braille.

In the rule's preamble, the Department of Justice (DOJ) explained:

> The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, *not to alter the nature or mix of goods that the public accommodation has typically provided.*  In other words, a bookstore, for example, must make its facilities and sales operations accessible to individuals with disabilities, but is not required to stock Brailled or large print books.  Similarly, a video store must make its facilities and rental operations accessible, but is not required to stock closed-captioned video tapes.[4]

DOJ's ADA Title III Technical Assistance Manual (the "Manual") lists additional examples, including that a local bookstore that customarily stocks only regular print versions of books is not required to expand its inventory to include large print or audio books.[5]  "[T]he Department of Justice's [ADA] regulations are entitled to controlling weight unless they are 'arbitrary, capricious, or manifestly contrary to the statute[]' and its manual is given substantial deference unless another reading is compelled by the regulation's plain language."  *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 n.8 (2d Cir. 1997) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)); *see also  Noel v. N.Y. City Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012).  In short, Section 36.207 makes clear that there is no requirement for AMC make and sell a gift card that has Braille or some other accessibility feature.

Numerous courts have held, consistent with the principles set forth in Section 36.307, that a public accommodation is not required under the ADA to change the mix of goods that it stocks and sells to include accessible goods.  *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1117 n.77 (9th Cir. 1999); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559-560 (7th Cir.

---

[4] Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35,544, 35,571 (July 26, 1991) (emphasis added).

[5] DOJ Technical Assistance Manual § III-4.2500.

1999); *Lenox v. Healthwise of Ky., Ltd.*, 149 F.3d 453, 456-457 (6th Cir. 1998); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998); *Funches v. Barra*, No. 14-cv-7382, 2016 WL 2939165, at *4 (S.D.N.Y. May 17, 2016); *Jancik v. Redbox Automated Retail, LLC*, No. SACV 13-1387, 2014 WL 1920751, at *1, 5–6 (C.D. Cal. May 14, 2014).

In *Weyer*, for example, the Ninth Circuit held that an insurance company did not violate Title III by offering insurance policies that treat individuals with certain disabilities differently than others. *Weyer*, 198 F.3d at 1115.  The court explained that "[t]he ordinary meaning of [Title III] is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services." *Id.*  But the law "does not require provision of different goods or services." *Id.*  Thus, "'an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled.'" *Id.* (quoting *Ford*, 145 F.3d at 613).

In *Mutual of Omaha*, the Seventh Circuit explained that "[t]he common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated." *Mut. of Omaha Ins. Co.*, 179 F.3d at 560.  "A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons." *Id.* at 560.  *See also Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir. 1997) ("The applicable regulations clearly set forth that Title III regulates the *availability* of the goods and services the place of public accommodation offers as opposed to the *contents* of goods and services offered by the public accommodation.") (emphases added).

In *Jancik*, the court rejected the plaintiff's argument that the ADA requires automated DVD rental kiosks to stock closed-captioned DVDs. *Jancik*, 2014 WL 1920751, at *1, 5-6.  The court explained that "[a]ccording to 28 C.F.R. § 36.307(a), Title III does not require a place of public

accommodation to 'alter its inventory to include accessible or special goods that are designed for or facilitate use by, individuals with disabilities.'" *Id.* at *5.  "[C]losed-captioned DVDs," the court reasoned, are precisely such special or accessible goods.  *Id.*

In *Funches*, the court rejected the plaintiff's claim that the ADA required an automobile manufacturer to produce and offer for sale cars with special hand controls.  *Funches*, 2016 WL 2939165, at *4.  Citing 28 C.F.R. §36.307, this Court concluded that Title III regulates only *access* to goods and services, but does not require a business to "alter its inventory to include accessible or special goods."  *Id.*

The foregoing cases also highlight that Plaintiff's attempt to avoid dismissal by characterizing AMC's gift cards as "a service" (as opposed to a good), is futile.   FAC, ¶ 70.  All of these cases stand for the principle that the ADA dos not does not "require provision of different goods *or services*, just nondiscriminatory enjoyment of those that are provided."  *Weyer*, 198 F.3d at 1115 (emphasis added).  *See also Mut. of Omaha*, 179 F.3d at 560 ("[t]he common sense of the statute is that the content of the goods *or services* offered by a place of public accommodation is not regulated") (emphasis added); *Parker*, 121 F.3d at 1012 (Title III does not regulate "the contents of goods *and services* offered by the public accommodation.") (emphasis added); *Jancik*, 2014 WL 1920751, at *4 ("The core meaning of Title III, plainly enough, is that the ADA requires equal access to places of public accommodation—not equally valuable goods *and services* available at the public accommodation.") (emphasis added).

Moreover, Plaintiff's attempt to characterize a gift card as something other than a "good" contradicts the common and legal definitions of the term "goods."  Merriam-Webster defines the term "goods" as "personal property having intrinsic value" and "something manufactured or

produced for sale."[6]  There can be no dispute that AMC's gift card is a physical card that, once purchased, becomes the purchaser's personal property.  *See* 15 U.S.C. § 1693l-1[7] (defining "store gift card" as, *inter alia*, a "plastic card … that is … *purchased* … in exchange for payment") (emphasis added).  It has intrinsic value because it can be redeemed for goods and services. Further, the FAC alleges that AMC's gift cards were placed into the stream of commerce for sale, FAC, ¶ 29, and characterizes them as a type of "product."  FAC, ¶ 34.  Like other goods, the gift cards are sold to purchasers, and the purchaser contemporaneously leaves the premises with the card.  Like other goods, too, the card can be physically transferred to others and given as a gift. And like many other goods, a gift card is often stocked and sold by other public accommodations that did not manufacture the gift card.

AMC's gift cards also fall squarely within the Uniform Commercial Code's definition of "goods."  *See* N.Y. U.C.C. Law § 2-105(1) (McKinney).  Under the UCC, "'Goods' means all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid."  AMC's gift card is clearly a tangible "thing" which is in fact "moveable" as soon as it is sold.  Thus, AMC's gift card falls comfortably within the definition of "goods" both in commercial law and ordinary usage.

Accordingly, Section 36.307 and pertinent case law establish that AMC has no obligation under the ADA to produce or sell gift cards that have Braille or some other accessibility feature.

---

[6] *See* MERRIAM-WEBSTER,  https://www.merriam-webster.com/dictionary/good. (last visited Apr. 1, 2020); *see also Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1013 (9th Cir. 2017) (relying on Mirriam-Webster definition of "goods" in ADA Title III case as "something manufactured or produced for sale").

[7] A provision of the federal Credit CARD Act of 2009.  *See N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 389 (3d Cir. 2012).

2.      **The ADA's Regulation Concerning the Provision of Auxiliary Aids and Services Does Not Mandate the Sale of Gift Cards with Braille or Other Accessibility Features.**

Plaintiff claims that 28 C.F.R. § 36.303 ("Section 36.303") requires AMC to make and sell accessible gift cards.  This regulation requires public accommodations to provide auxiliary aids and services to individuals with disabilities where necessary to ensure effective communication with them.  As set forth below, no part of Section 36.303 requires AMC to make or sell accessible gift cards with Braille or any other accessibility feature.

First, Section 36.303 cannot be applied to require Braille or some other accessibility feature on AMC's gift cards without nullifying Section 36.307, which clearly states AMC is not required to make or sell "accessible goods."  "[A] basic tenet of statutory construction ... [is] that [a text] should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."  *APWU v. Potter*, 343 F.3d 619, 626 (2d Cir. 2003) (internal quotations and citation omitted); *U.S. v. Knauer*, 707 F. Supp. 2d 379, 386 (E.D.N.Y. 2010) ("Courts should avoid interpreting statutes or regulations in a manner that would neuter their provisions.").[8]  The only way to reconcile Section 36.307 with Section 36.303 is to conclude that public accommodations are not required to provide auxiliary aids and services to make a good inherently accessible.

Second, Section 36.303 would not require AMC to make and sell Braille or otherwise accessible gift cards even if the cards were not a "good" within the scope of Section 36.307.  28 C.F.R. § 36.303(c)(1) requires a public accommodation to "furnish appropriate auxiliary aids and

---

[8] S*ee also State St. Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) ("It is well-settled that courts should avoid statutory interpretations that render provisions superfluous: 'It is our duty to give effect, if possible, to every clause and word of a statute.'") (internal citations omitted).

services where necessary to ensure effective communication with individuals with disabilities."

Section 36.303(b) provides a non-exhaustive list of auxiliary aids that a public accommodation

might provide to a blind individuals, including "[q]ualified readers; taped texts; audio recordings;

Brailled materials and displays; screen reader software; [and] magnification software." 28 C.F.R.

§ 36.303(b)(2).  Section 36.303(c)(1)(ii) states, in relevant part, that:

> [t]he type of auxiliary aid or service necessary to ensure effective communication
> will vary in accordance with the method of communication used by the
> individual; the nature, length, and complexity of the communication involved; and
> the context in which the communication is taking place.  A public accommodation
> should consult with individuals with disabilities whenever possible to determine
> what type of auxiliary aid is needed to ensure effective communication, *but the
> ultimate decision as to what measures to take rests with the public
> accommodation, provided that the method chosen results in effective
> communication*.

28 C.F.R. § 36.303(c)(1)(ii) (emphasis added).  In short, the ADA does not guarantee an individual

with a disability the auxiliary aid of his or her choice, nor does it specify which auxiliary aid or

service must be provided.  As DOJ explained, "Congress did not intend under Title III to impose

upon a public accommodation the requirement that it give primary consideration to the request of

the individual with a disability." Appendix C to 28 C.F.R § 36.303 (citing 28 C.F.R. Pt. 36, App.

B at 726 (2009)).  Rather, "[t]he auxiliary aid requirement is a flexible one.  A public

accommodation can choose among various alternatives as long as the result is effective

communication."[9]

Courts have uniformly recognized that the ADA does not require public accommodations

to provide a disabled individual's preferred auxiliary aid.  *See Childress v. Fox Assocs., LLC*, 932

F.3d 1165, 1171 (8th Cir. 2019) ("The exact form of auxiliary aid necessary is left up to the public

accommodation[.]"); *Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 394 (4th Cir. 2011) ("the

---

[9] Nondiscrimination on the Basis of Disability by Public Accommodations in Commercial
Facilities, 56 Fed. Reg. 35,544, 35,567 (July 26, 1991).

public accommodation can choose what auxiliary aids are provided as long as the result is effective communication"); *West v. Moe's Franchisor, LLC*, No. 15CV2846, 2015 WL 8484567, at *2 (S.D.N.Y. Dec. 9, 2015) ("the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication").

Thus, the regulatory scheme makes clear that there is no requirement to provide any specific accessibility feature on a gift card where other auxiliary aids would provide effective communication.  "In many cases, more than one type of auxiliary aid or service may make effective communication possible."[10]  The regulation identifies several aids that might assist a blind patron, including not only Braille materials, but also qualified readers and other non-Braille aids such as "audio recordings."  28 C.F.R. § 36.303(b)(2).  Indeed, it makes little sense to make and sell Braille gift cards as a routine matter when fewer than 10% of the 1.3 million legally blind Americans use Braille to communicate.[11]  *See Am. Council of Blind v. Astrue*, No. C 05-04696 WHA, 2009 WL 3400686, at *8 (N.D. Cal. Oct. 20, 2009) ("Less than ten percent of the blind and visually impaired can read Braille.").

In fact, as DOJ indicated in its commentary to the regulations, "a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu." 28 C.F.R. Pt. 36, App. C.  "Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request[.]"  *Id.*; *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (explaining that restaurants are not required to provide large print menus so long as they ensure the content of

---

[10] DOJ Technical Assistance Manual III-4.3200.
[11] *See also The Braille Literacy Crisis in America*, NATIONAL FEDERATION OF THE BLIND JERNIGAN INSTITUTE, Mar. 26, 2009,
https://www.nfb.org/sites/www.nfb.org/files/images/nfb/publications/bm/bm09/bm0905/bm090504.htm.

the menu is effectively communicated). The DOJ's Technical Assistance Manual provides many

other examples of auxiliary aids and services that provide access to blind individuals which do not

involve Braille, as follows:

> ILLUSTRATION: W, an individual who is blind, needs assistance in locating and removing an item from a grocery store shelf. A store employee who locates the desired item for W would be providing an "auxiliary aid or service. "
>
> ...
>
> ILLUSTRATION 3: S, an individual who is blind, visits an electronics store to purchase a clock radio and wishes to inspect the merchandise information cards next to the floor models in order to decide which one to buy. Reading the model information to S should be adequate to ensure effective communication. Of course, if S is unreasonably demanding or is shopping when the store is extremely busy, it may be an undue burden to spend extended periods of time reading price and product information.
>
> ILLUSTRATION 4: S also has tickets to a play. When S arrives at the theater, the usher notices that S is an individual who is blind and guides S to her seat. An usher is also available to guide S to her seat following intermission. With the provision of these services, a Brailled ticket is not necessary for effective communication in seating S.
>
> ILLUSTRATION 5: The same theater provides S with a tape-recorded version of its printed program for the evening's performance. A Brailled program is not necessary to effectively communicate the contents of the program to S, if an audio cassette and tape player are provided.

DOJ Technical Assistance Manual § III-4.3100.[12]

In this case, Plaintiff claims that the absence of Braille on the AMC gift card prevents him

from being able to identify the card and access the balance on the card, the terms and conditions

on the card, and its unique identification number. The DOJ guidance illustrates that if he needed

to find the card, an employee at the location of purchase could have provided assistance. If

---

[12] *See also Guide for Places of Lodging:  Service Guests Who are Blind or Have Low Vision*, U.S. DEP'T OF JUSTICE, https://www.ada.gov/lodblind.htm ("Forms and Documents. Upon request, staff should read fully, and provide assistance in completing, registration folios, hotel bills, service request forms, and other documents.")

Plaintiff wanted to know what was printed on the card, an employee could have read the information to him.  If Plaintiff wanted a permanent recording of what was printed on the card, an employee could have recorded a voice memo on Plaintiff's mobile device, or email or mail an audio recording to Plaintiff if he has no mobile device.  If Plaintiff said he needed a way to distinguish the AMC gift card in his wallet, an employee could have put a notch or piece of tape on the card to distinguish it from others.  For the card balance, Plaintiff would have to call into a toll-free number to hear the balance, just like sighted gift card holders.  In short, there are any number of auxiliary aids and services that can be provided to Plaintiff and other blind users to provide access to AMC gift cards that would be specific to the needs and resources of each person once the person puts AMC on notice of a need for an auxiliary aid or service.  *See* 28 C.F.R. § 36.303(c)(1)(ii) (enumerating factors to be considered in determining propriety of particular auxiliary aid following a "consult[ation]").

In this case, the FAC makes clear that Plaintiff did not put AMC on notice that he needed an kind of auxiliary aid or service.  He only allegedly asked the AMC employee on the phone if AMC sold Braille gift cards.  FAC, ¶ 16.  He did not say that he needed the card for himself, or that he could not read the information on the card.  He did not ask for an auxiliary aid or service. *Id*.  These allegations do not establish that Plaintiff actually denied Plaintiff an auxiliary aid or service, because a plaintiff seeking an auxiliary aid from a place of public accommodation must plead that he or she made sufficient requests for an auxiliary aid to support a "reasonable inference" that no aid is available.

In *West v. Moe's Franchisor, LLC*, the court dismissed a claim by blind customers who alleged that they had visited the defendant restaurant on one occasion, requested assistance using a touch screen drink machine, and were denied such assistance.  2015 WL 8484567, at *4.  The

plaintiffs failed to state a claim under the ADA because no reasonable inference could be drawn from one "isolated incident" that "Moe's fails to train its employees to provide effective auxiliary aids and services."  *Id.*  In *West v. Five Guys Enters., LLC*, the court similarly concluded that a claim for an auxiliary aid cannot be based on just "one occasion."  *West v. Five Guys Enters., LLC*, No. 15-cv-2845, 2016 WL 482981, at *1–2 (S.D.N.Y. Feb. 5, 2016).  *See also Stephens v. Shuttle Assocs.*, *L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.N.Y. 2008) ("based only on one isolated incident [plaintiff] has alleged no set of facts to indicate that [defendants] failed to adopt policies or procedures to effectively train their employees on how to deal with disabled individuals").  These cases show that a plaintiff must put a defendant on notice of a need for an auxiliary aid or service and give it an opportunity to provide one before simply filing suit.

Here, Plaintiff never alerted AMC to any need for an auxiliary aid and filed suit three days later.  In short, Plaintiff has failed to allege facts that constitute a violation of the ADA's requirement to furnish auxiliary aids and services, and his claim must be dismissed with prejudice.

### 3.    Plaintiff's Argument that AMC Gift Cards are Like Currency that Must be Accessible Has No Merit.

In 2008, the Court of Appeals for the D.C. Circuit held that the Department of the Treasury must make U.S. paper currency accessible to the blind in a lawsuit brought under Section 504 of the Rehabilitation Act ("Section 504").  *See Am. Council for the Blind v. Paulson*, 525 F.3d 1256, 1274 (D.C. Cir. 2008).  Relying on this decision, Plaintiff claims that AMC's gift cards must also be accessible because they are "a cash like product."  FAC, ¶ 34 & n.7.  An examination of the *Paulson* decision makes clear that it has no relevance to the issues in this case.

First, *Paulson* was decided under Section 504, not Title III of the ADA.  Section 504 only applies to "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."  *Paulson*, 525 F.3d at 1260 (quoting 29 U.S.C. §

794).  There is no allegation that AMC receives any federal financial assistance or is an Executive agency, so AMC is clearly not covered by Section 504.

Second, the regulatory scheme under these two statutes are entirely different.  *Compare* 28 C.F.R. Part 36 (ADA Title III regulations) *with* 31 C.F.R. Part 17 (Department of the Treasury Section 504 regulations).  For example, the Department of the Treasury Section 504 regulations contain no counterpart to Section 36.307 (exemption for accessible goods).

Third, an AMC gift card is not, under any stretch of the imagination, comparable to U.S. currency.  The court in *Paulson* observed that U.S. currency "has constitutional underpinnings," and "is intended to be 'the universal medium or common standard, by a comparison with which the value of all merchandise may be ascertained."  525 F.3d at 1268.  It also stated that the "Founding fathers believed that U.S. currency should be readily usable by the public … and easy identification of the value of currency was considered one of its crucial characteristics."  *Id.* at 1268 n.16 (quotation marks and citations omitted).  Thus, due to the pervasive role of currency as an underpinning of economic activity, the court held, a lack of meaningful access to the nation's currency undermined the Rehabilitation Act's "emphasis on independent living and self-sufficiency … ."  *Id.* at 1269.

AMC gift cards bear none of the legally pertinent characteristics of U.S. currency.  Whereas currency is the "universal medium or common standard … with which the value of all merchandise may be ascertained," AMC gift cards are only "redeemable at a single merchant or [] affiliated group of merchants[,]" are "issued in a specified amount," are "purchased on a prepaid basis in exchange for payment[,]" and are "honored upon presentation [only] by such single merchant or affiliated group of merchants[.]"  FAC, ¶ 4 n.2; *see also id.* at ¶ 29 n.4 (store gift cards

17

at issue "are accepted only at a specific merchant or affiliated merchants").  Furthermore, an AMC gift card, unlike actual money, requires the holder to engage in future business with AMC.

It is precisely these limitations that have led multiple courts, often in the context of approving class-action settlements under Fed. R. Civ. P. 23, to observe that items such as store gift cards, prepaid vouchers, and coupons are forms of *in-kind*, non-monetary compensation.  Unlike cash, a gift card's actual economic value differs from its face value due to the constraints on its utility.  *See*, *e.g.*, *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (stating that store coupons are "a form of in-kind payment" and observing that "compensation in kind is worth less than cash of the same nominal value"); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (defendant's pre-paid envelopes were "a form of in-kind compensation that shares some characteristics of coupons, including forced future business with the defendant"); *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (stating that "[s]ettlements involving nonmonetary provisions for class members … deserve careful scrutiny" and that "the real economic value" of store gift cards "falls short of their printed value") (internal quotations and citation omitted); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *10 (C.D. Cal. July 21, 2008) (finding that "gift cards have a cash value that is less than the face amount of the card").

In short, the *Paulson* decision in no way supports Plaintiff's claim that AMC must make and sell gift cards with Braille or some other accessibility feature.

**B.**  **Plaintiff's NYSRL, NYCHRL, and Declaratory Judgment Claims Must Be Dismissed.**

Like the ADA, neither the NYSHRL and the NYCHRL contains any requirement to provide Braille or any other accessibility feature on gift cards.  Because the same standards used to evaluate claims under the ADA also apply to cases involving the NYSRL and NYCHRL, the

18

analysis set forth in Section I.A. *supra* makes clear that Plaintiff's claims under these statutes must also be dismissed. *See Rodal v. Anesthesia Grp. of Onondaga*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."); *Romanello v. Shiseido Cosmetics Am., Ltd.*, No. 00 Civ. 7201, 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002) (applying ADA analysis to both NYSHRL and NYCHRL); *Stephens*, 547 F. Supp. 2d at 278 ("Because the scope of the disability discrimination provisions of the NYCHRL and NYSHRL are similar to those of the ADA … [Plaintiff's] claims under the NYCHRL and NYSHRL [should] also dismissed.") .[13]

Additionally, because Plaintiff's substantive discrimination claims under federal and state law fail as a matter of law, his claim for declaratory relief (the fourth count of the complaint) cannot survive and should be dismissed. *KM Enterprises, Inc. v. McDonald*, No. 11-CV-5098 ADS ETB, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) (where "the Plaintiff has no independent substantive claim of a right to [] relief … the cause of action for declaratory relief is appropriately dismissed for failure to state a claim") (*citing Porat v. Lincoln Towers Cmty. Ass'n*, No. 04-cv-3199-LAP, 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005)).

## II.     The Complaint Must Be Dismissed Under FRCP 12(b)(1) Because Plaintiff Lacks Standing.

### A.     Plaintiff Has Not Suffered an Injury In Fact nor Does He Face An Imminent Future Injury.

A claim must be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when a plaintiff has failed to allege facts sufficient to establish standing under Article III of the

---

[13] *See also Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 398 (E.D.N.Y. 2017) ("disability discrimination claims under the NYSHRL rise or fall in tandem with disability discrimination claims brought pursuant to the federal ADA.") (citing *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 186 n.3 (2d Cir. 2006)).

19

Constitution.  *Cortlandt St. Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  Article III standing requires, among other things, an "injury in fact" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).  Further, in order to seek injunctive relief, a plaintiff must establish a likelihood of imminent future injury.  *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983); *see also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (explaining that a plaintiff must establishing standing "for each form of relief that is sought") (internal quotations and citations omitted).

In the Second Circuit, an injury in fact exists in an ADA Title III lawsuit where: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [defendant's establishment] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler*, 731 F.3d at 187–88.  The last factor in particular is necessary to show the likelihood of imminent future injury required for injunctive relief.  Plaintiffs alleging barriers at a place of public accommodation have standing to seek injunctive relief only if they also "show a plausible intention or desire to return to the place but for the barriers to access." *Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005).  And though a plaintiff need not make the "futile gesture" of visiting a building, the plaintiff must sufficiently allege that the accommodation contained known barriers and that he or she would visit the establishment in the imminent future but for the barriers.  *Id.*  An "[i]ntent to return to the place of injury 'some day' is insufficient." *Id.* at 87 (quoting *Lujan*, 504 U.S. at 564).

Even assuming that the refusal to create and sell an accessible gift card constituted actionable discrimination (which it does not), Plaintiff does not plausibly allege a past injury.  His

sole allegation of past harm is that on October 22, 2019, he "telephoned Defendant's customer service office … and inquired if Defendant sold store gift cards containing Braille[,]" and was "informed" that Defendant does not.  FAC, ¶ 16.  This conclusory statement lacks the specificity required to give rise to a reasonable inference that he suffered a *concrete* and *particularized* injury. *See Feltzin v. Triangle Properties #1, LLC*, No. 14-cv-5131, 2016 WL 11599264, at *5 (E.D.N.Y. Dec. 15, 2016) (explaining that claims without any supporting factual allegations that amount to "no more than a conclusory recitation of the legal elements of a direct injury under the ADA" will not be accepted).

To establish a "concrete and particularized" injury, the FAC must address how Plaintiff was harmed by AMC's decision not to sell a Braille gift card.  *Perdum v. Forest City Ratner Cos.*, 677 F. App'x 2, 3 (2d Cir. 2017) (A plaintiff lacks standing where the defendant's alleged actions "posed no obstacle to [plaintiff's] access to the places of public accommodation.").  In *Triangle Properties*, the court rejected as improperly conclusory the plaintiff's allegations that he visited a shopping center and "encountered architectural barriers," which vaguely impaired his ability to "park safely at the premises, to use restrooms safely and to access the goods and services at the premises." 2016 WL 11599264, at *2.  The plaintiff failed to plead that "he was ever hindered from accessing or utilizing any part of any tenant's business" in the shopping center or that he ever frequented any particular business.  *Id.* at *5  Here, the FAC only vaguely alleges that Plaintiff "has been a customer at Defendant's *stores* on prior occasions[,]" FAC, ¶ 21, and that the lack of access to a Braille gift card has "denied [him] equal access to Defendant's movie theaters and the numerous goods, services, and benefits offered to the public through the Defendant's store gift cards." FAC, ¶ 40.  Plaintiff does not identify what theater he specifically was trying to access, however, or why the lack of a Braille gift card prevented his access.  Indeed, it is hard to imagine

why the absence of a Braille gift card would impede Plaintiff's ability to patronize AMC's theaters, since he can pay for tickets or concessions with a credit card or cash – the same methods of payment he would need to use to buy a gift card in the first place.  "[T]hese conclusory allegations lack any specificity, and without more, preclude a reasonable inference that Plaintiff suffered injury under the ADA at any specifically identifiable time in the past." *Rizzi v. Hilton Domestic Operating Co., Inc.*, No. 18-CV-1127(SJF)(ARL), 2019 WL 5874327, at *5 (E.D.N.Y. July 18, 2019), *report and recommendation adopted*, No. 18-CV-1127(SJF)(ARL), 2019 WL 4744209 (E.D.N.Y. Sept. 30, 2019) (internal quotations and citation omitted).

Plaintiff also shows no plausible intention to go to any of AMC's theaters where he might need to use a gift card in the future.  Plaintiff must allege facts that "show a plausible intention or desire to return to the place but for the barriers to access." *Shariff v. Channel Realty of Queens, LLC*, No. 11-cv-1499, 2013 WL 5519978, at *2 (E.D.N.Y. Sept. 30, 2013).  Those facts might include the proximity of the public accommodation to plaintiff's residence, past patronage of the business, the definitiveness of a desire to return, and frequency of travel near the defendant.  *Id.* at *3 (quoting *Access 4 All, Inc. v. G&T Consulting Co., LLC*, No. 06 CIV 13736, 2008 WL 851918, at *8 (S.D.N.Y. Mar. 28, 2008)).  Here, Plaintiff does not allege any desire to patronize *any* particular theater at all; he only alleges that he intends to "immediately purchase" a Braille gift card from AMC "as soon as the Defendant sells store gift cards that are accessible" and "utilize" the gift card at some unspecified time in the future.  FAC, ¶21.  Indeed, Plaintiff does not allege that he has visited any of AMC's theaters in the past (stating only vaguely that he has "been a customer" at an undisclosed "store" at unspecified times), nor does he allege an intent to visit any particular AMC movie theaters in the future.  *See Feltzin v. Stone Equities, LLC*, No. CV166457SJFAKT, 2018 WL 1115135, at *11 (E.D.N.Y. Feb. 8, 2018), *report and*

*recommendation adopted*, No. 16CV6457SJFAKT, 2018 WL 1114682 (E.D.N.Y. Feb. 26, 2018) ("In the case of a public accommodation for which other reasonable substitutes may exist, like restaurants and malls, the plaintiff must plead facts that tend to show that the plaintiff … is interested in what it has to offer.") (internal quotations and citation omitted).  The fact that Plaintiff lives "near" one of AMC's theater locations, FAC ¶ 25, is not enough to establish standing.  *Gen. Nutrition*, 388 F. Supp. 2d at 89 (even "plaintiff's showing that he 'live[s] in close proximity' to the public accommodations he is challenging is clearly insufficient to establish standing under Title III of the ADA.").

Even if the court were to construe the FAC as alleging Plaintiff's desire to patronize some AMC theater at some time in the future, that would be at best a "some day" intention which is insufficient to establish standing for injunctive relief.  *Lujan*, 504 U.S. at 564.  In *Stone Equities*, the magistrate judge rejected as an insufficient "some day" intention the plaintiff's statement that he intended to return to a facility once it "becomes fully accessible."  *Stone Equities*, 2018 WL 1115135, at *11.  And, in *Castillo*, the court found "it was not reasonable to infer that [the plaintiff] intended to return" where the plaintiff pleaded only an intent to visit a theater "once the access barriers are remedied" but failed to allege that she visited the theater in the past, lives near the theater, or travels near the theater.  *Castillo v. The John Gore Org., Inc.*, No. 19-cv-388, 2019 WL 6033088, at *6 (E.D.N.Y. Nov. 14, 2019).[14]  Similarly, Plaintiff here alleges only that he intends

---

[14] Courts in other circuits have reached the same conclusion.  *See, e.g.*, *Norkunas v. Wynn Resorts Holdings, LLC*, No. 2:07CV00096RLHPAL, 2007 WL 2949569, at *1 (D. Nev. Oct. 10, 2007) *aff'd sub nom. Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269 (9th Cir. 2009) (no imminent injury despite plaintiffs' claim that they had a desire to return to the defendant's casino in the future and that they had visited Las Vegas at least once a year); *Holt v. Am. City Diner, Inc.*, No. CIV. 05-1745 (CKK), 2007 WL 1438489, at *6 (D.D.C. May 15, 2007) (allegation that plaintiff had eaten at defendant's restaurant and intended to return to restaurant once barriers were removed, coupled with his claim that he traveled to the area three times per week, was not enough to establish imminent injury); *Access for the Disabled, Inc. v. Rosof*, No. 805CV1413T30TBM, 2005 WL

to purchase a gift card "as soon as the Defendant sells store gift cards that are accessible to the blind[.]" FAC, ¶ 21. That conclusory statement does not establish Article III standing to pursue prospective injunctive relief.[15]

In sum, Plaintiff does not plausibly allege a past injury nor anything more than (at best) a purely hypothetical intention to return to one of AMC's theaters  Plaintiff therefore lacks Article III Standing to pursue his ADA claim.

### B.    Plaintiff's Remaining State and Municipal Law Claims Should Be Dismissed.

If this Court dismisses Plaintiff's ADA claim for lack of standing, it should also dismiss the state and municipal law claims, as well as the general count for declaratory relief.  First, the "New York State and City claims are governed by the same standing requirements as the ADA." *Mendez v. Apple, Inc.*, 18-cv-7550, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019). Second, the Court should, at a minimum, decline to exercise supplemental jurisdiction.  A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise

---

3556046, at *2 n.3 (M.D. Fla. Dec. 28, 2005) (plaintiff's alleged intent to visit defendant's facility once a year in the future was not sufficient to establish standing); *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. CIV.A.3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (no imminent injury despite allegation that plaintiff had plans to return to the property); *Brother v. Rossmore Tampa Ltd. P'ship*, No. 8:03CV1253T-24MAP, 2004 WL 3609350, at *4-5 (M.D. Fla. Aug. 19, 2004) (no imminent injury despite plaintiff's submission of an affidavit stating an intent to return to defendant's hotel in the future, and detailing his visits to the area several times a year).

[15]  Plaintiff's identical allegations in the no fewer than 11 other lawsuits he has filed in this Court also seriously undermines his claim that intends to purchase one of AMC's gift cards in the future, let alone visit any particular theater location. *See* note 1, *supra* and Ex. A.; *Lamb v. Charlotte Cty.*, 429 F. Supp. 2d 1302, 1309 (M.D. Fla. 2006) (plaintiff's claim that she would return to properties was not credible given the number of similar suits she filed throughout a vast geographic area); *Brother*, 2004 WL 3609350, at *4 (plaintiff's professed intent to return to defendant's property lacked credibility considering the number of suits he had filed).

pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  Dismissal of these causes of action, in turn, requires dismissal of the fourth count of the complaint seeking declaratory relief.  *Se*e *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("the statute authorizing the declaratory judgment remedy explicitly incorporates the Article III case or controversy limitation … [t]he Declaratory Judgment Act does not expand jurisdiction … [n]or does it provide an independent cause of action").

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety with prejudice either because Plaintiff has failed to state a cognizable claim under the ADA, the NYSHRL, and the NYCHRL.  Moreover, Plaintiff lacks standing even if he has pleaded an actionable claim.

Dated:  April 2, 2020

Respectfully submitted,

SEYFARTH SHAW LLP


By:  */s/ John W. Egan*
     John W. Egan
     620 Eighth Avenue
     New York, New York 10018-1405
     Phone:  212.218.5500
     Fax:  212.218.5526
     jegan@seyfarth.com

     Minh N. Vu (admitted pro hac vice)
     Seyfarth Shaw LLP
     975 F Street, N.W.
     Washington D.C. 20004
     Phone: 202.828.5337
     mvu@seyfarth.com

     *Attorneys for Defendant*
     *AMC Entertainment Holdings, Inc.*